Filed 8/7/14  In re Elizabeth D. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ELIZABETH D., a Person Coming Under the Juvenile Court Law. | D065669 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. RICK S., Defendant and Appellant. | (Super. Ct. No. EJ3148) |

APPEAL from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Dana C. Shoffner, Deputy County Counsel, for Plaintiff and Respondent.

Rick S. appeals the judgment terminating his parental rights to his daughter, Elizabeth D. Rick contends the juvenile court erred by declining to apply the beneficial relationship exception (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i))[1] to termination of parental rights. We affirm.

## BACKGROUND

Rick has a history of mental illness, substance abuse and domestic violence. Just days before Elizabeth was born in December 2008, her mother, Jennifer D., reported that Rick had slapped her. As a result, Jennifer obtained legal custody of Elizabeth and Rick had supervised visitation.

In September 2009, the San Diego County Health and Human Services Agency (the Agency) detained nine-month-Elizabeth and filed a dependency petition because Jennifer was unable to care for her due to mental illness and Rick had not protected Elizabeth. The juvenile court declared Elizabeth a dependent and ordered her removed from parental custody. During the dependency, Elizabeth lived with her maternal grandmother and maternal uncle for more than one year. In February 2011, Elizabeth began a 60-day trial visit with Rick. At the 18-month hearing in April, the court ordered Elizabeth placed with Rick. In November, the court awarded Rick custody of Elizabeth, with supervised visits for Jennifer, and terminated dependency jurisdiction.

In February 2012, the Agency filed a new petition for three-year-old Elizabeth. The petition alleged Rick had relapsed on alcohol and let Jennifer into his home in

---

1   All further statutory references are to the Welfare and Institutions Code.

violation of custody orders. Elizabeth was detained with her maternal grandmother and maternal uncle and remained there for the remainder of the case. In April, the court made a true finding on the petition, ordered Elizabeth removed from parental care and ordered reunification services for Rick. At the 18-month hearing in October 2013, the court terminated Rick's services and set a section 366.26 hearing. The section 366.26 hearing took place in March 2014.

DISCUSSION

If a dependent child is adoptable,[2] the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception. (§ 366.26, subd. (c)(1); *In re Helen W*. (2007) 150 Cal.App.4th 71, 80-81.) One exception exists if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome. . . ." (*Ibid*.) The existence of a beneficial relationship is determined by considering "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the

---

[2]     Rick does not contest the adoptability finding.

child's particular needs . . . ." (*Id*. at p. 576.) Examining the evidence most favorably to the judgment (*ibid*.), we conclude substantial evidence supports the court's conclusion that the benefits of adoption outweighed "the potential uncertainty of a continued relationship" between Elizabeth and Rick, "even if she does suffer from emotional pain because she might not see" him. The court found Elizabeth and Rick loved each other but their relationship was strained and Rick's role was that of a friendly visitor. He did not show stability or consistency and "didn't occupy a parental relationship with [Elizabeth] for any substantial period of time." This led Elizabeth to feel conflicted.[3]

By March 2014, five-year-old Elizabeth had been out of Rick's care for more than two years. She had lived with him for only about one year of her life. Elizabeth had lived with the maternal grandmother and maternal uncle for a total of more than three years: more than two years in this case and more than one year in the earlier case. The maternal grandmother had also cared for Elizabeth at times when she was not a court dependent. Elizabeth identified the maternal grandmother's home as her home. Elizabeth was attached to her caregivers and sought them out to meet her needs. Elizabeth had a parent-child relationship with her caregivers. The caregivers provided Elizabeth the safety, stability and consistency she needed and wished to adopt her. Elizabeth called the maternal grandmother "grandma" or "mom." In October 2013, Elizabeth asked the maternal uncle, "Can you be my daddy?"

_____

[3]     The court did not make an express finding regarding the regularity of visitation and contact. Overall Rick visited inconsistently.

Rick's visits varied between supervised and unsupervised. Elizabeth sometimes enjoyed visits and sometimes did not. Rick's inconsistency in visiting caused Elizabeth emotional stress. Visits also caused her stress; after some visits she refused to eat, talked about space aliens and had nightmares. Rick made inappropriate comments in Elizabeth's presence, such as stating that while under the influence, he passed out and could have died. When Elizabeth was climbing on a play structure, he told her not to fall or he would laugh at her. Elizabeth reported that during one visit, she watched a movie about AIDS and during another visit, she and Rick watched a show called "Murder Most Horrible."

In September 2013, when overnight visits began, Elizabeth began exhibiting behavioral problems at school, including violence toward other children, touching her "private area" and wetting her pants. Elizabeth said Rick had licked her hand. Rick did not visit Elizabeth in October. He visited just twice in November and twice in December. Beginning in December, Elizabeth refused to speak with Rick on the telephone. Between late January and late February 2014, Rick visited just twice. At a visit in early February, Elizabeth told Rick, "I don't like you. Leave me alone." Just after the visit, Elizabeth expressed a desire to be adopted by her maternal grandmother. One week later, Elizabeth said she wanted to live with her maternal grandmother and did not want to live with Rick because he was mean and had broken her favorite compact disc. On other occasions, Elizabeth said she wanted to live with Rick. Elizabeth felt torn.

Elizabeth recognized Rick as her father, and he sometimes played a parental role during visits. Elizabeth viewed Rick as a visitor. She sometimes called him by his first

5

name and sometimes called him "dad" or "daddy." The social worker believed Elizabeth would miss Rick if they had no further contact, but she would not be greatly harmed. Elizabeth needed the sense of stability, permanence, safety and consistency that adoption would provide.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.